May I proceed? Good morning, Your Honors. May it please the Court. Ann Barhom for the petitioner, Juan Melgoza Guerrero. I would like to reserve two minutes of my time for rebuttal. There are three issues that I would like to discuss in this case. The first concerns whether or not the immigration court actually had jurisdiction, subject matter jurisdiction, over this case in the first place in light of Pereira. Second, the BIA and the immigration court erred in finding that Mr. Melgoza Guerrero's crime was a particularly serious one. And lastly, the Board and IJ erred in finding Mr. Melgoza Guerrero's ineligible for cat relief. The threshold question in this case, following the Supreme Court ruling in Pereira v. Sessions, is the elephant in the room kind of question. It is whether or not the immigration actually did, jurisdiction did vest when they issued the NTA, and it was lacking the date and time of the hearing. I have a couple of questions about that. We always have jurisdiction to determine our own jurisdiction, that is, the jurisdiction of the federal court. But is that true with respect to an administrative agency's jurisdiction, or is that an issue that has to be raised at the time, unlike issues of our own power to decide cases in front of us? Well, my argument is that the subsequent regulation that was issued by the government failed to follow, was ultra-virus of the statute. Right. I guess my question isn't entirely clear. You did not raise this issue at the immigration court level or to the BIA. No, Your Honor. No. So ordinarily, that failure to exhaust the issue deprives this court of jurisdiction over that issue. But subject matter of course. Well, but that's why I asked the question. Subject matter jurisdiction of the court is always open to us to decide, because if we don't have the power to go any further, we shouldn't go any further. But I don't understand how that translates when the question is the jurisdiction of an administrative agency. Well, Your Honor, if you refer back to Pereira v. Sessions, they clearly stated that the notice-to-appear document was not, that lacked the date and time, was not a trivial ministerial problem. I know that, but that has nothing to do with whether the issue was exhausted at the administrative level. I understand that you have a good argument on the merits. The question I'm asking has to do with whether we have any business reaching the merits in the absence of administrative exhaustion. In my view, Your Honor, the subject matter jurisdiction can be raised at any time, even at this point. Furthermore, the subsequent Bermuda's Coda case is directly on point for this case. And that case, while it was decided by the BIA in August of this year, it does not meet the requirements of the statute. It simply argues that the regulations, it followed its own regulations. However, it's clearly ultra-virus of the statute, the 1229 statute. And when it's ultra-virus, it contradicts the clear and unambiguous language of the statute. Congress was very clear, and there's no question in my view that there's a problem with this notice-to-appear. In this case, and in many, many other cases, it doesn't mean that the government has the right to keep promoting this kind of mistake throughout. That's my opinion. Going to the second issue is whether or not the BIA and IJ properly found that Mr. Malgoza-Guerrera's crime was a particularly serious crime, which would deprive him of the possibility of withholding of removal. The BIA, in its argument, sorry, in its decision, did not discuss whether or not he was actually eligible for withholding of removal. In both decisions, the agency and the Court analyzed whether or not Mr. Malgoza-Guerrera's crime was a particularly serious crime because his sentence did not meet the criteria of the per se rule of five years. But I believe that the Court and agency erred when applying the Y.L. test to this case. Y.L. test has six factors. Sotomayor, they're not factors. They're requirements. They all have to be met. Correct? Correct. Okay. So if any one of them is lacking, then we lose. If you look at the particulars of the case, and since Y.L. is not a per se rule, you have to look at it a case-by-case basis. And Mr. Malgoza-Guerrera never brought the drugs into his apartment. He didn't know that they were there. They were hidden behind a cabinet in the bathroom of the room. But one of the criteria is that there be a very small quantity of drugs. That's one of the Y.L. criteria. And here, wasn't it more than a kilo? That's true, Your Honor. But so he fails that prong. He doesn't fail that prong. And if you look at the Because that's a very small quantity in your view? No, not that it's a very small quantity, but he didn't have control over it. He was not named in the search warrant. It was Juan Fajardo was named as the person of interest in the search warrant. And the search warrant searched three different locations. Juan Malgoza-Guerrero just happened to be in the wrong place at the wrong time. Well, you're telling us he's not guilty of the crime, but he was found guilty of the crime. He was found guilty of the crime. So that means he had to have knowledge of the drugs. But this is a rare and unusual case in the sense that he was not a direct he was not a direct perpetrator or actor in the crime. It's not that unusual. Believe me, the people at the top don't have the drugs in their homes or the guns in their homes. But there's absolutely no evidence that Mr. Guerrero had anything to do with those drugs. Then he should have been found not guilty. But when he's found guilty of the elements of that charge, he they all fall on him the same way they fall on an accomplice. But Mr. Malgoza-Guerrero voluntarily did come back to work on his case. He pled nolo contandre to the charges. But I believe you have to look at everything in the case. You can't, this is a case-by-case analysis, just like Francisco was a case-by-case analysis. And the subsequent are cases that looked at particularly serious crimes. So to hold this as some kind of per se rule, that you have to look at the amount of the drug as completely eliminating any opportunity to discuss further, I think is incorrect. And I would argue that if you look at all the other requirements, the two through six, there was no money exchanged in this case. He was not a main actor at all, he just happened to be there. It was his apartment, but Juan Fajardo had the key to the apartment. And according to the police report, Juan Fajardo was going in and out of the apartment at will, he had his own key. He did not pay Mr. Milgoza-Guerrero any money for use of that apartment. But aren't you asking us to do what is forbidden, that is to have a secondary hearing on the criminal conviction? I mean, you're relitigating the criminal plea, and there may be extenuating circumstances, but he pled guilty to an aggravated felony. I understand that, but I also see the fact that there were extenuating circumstances, and that since this isn't a per se rule, you can look at it as a case by case basis. I mean, there is a strong presumption in these drug trafficking charges that there are, that it's a particularly serious crime. But the consequences of a particularly serious crime are extreme, extremely harsh. So the fact that he was in the wrong place at the wrong time, I think, is at issue. And in all the cases, if you look at YL, the three cases that the Attorney General looks to when he makes his decision in those cases in the matter of YL, each of those actors was a direct perpetrator, and all the subsequent cases that I looked at, none of the actors were peripheral. Juan Malgoza-Guerrero was definitely peripheral. You're down to under four minutes. Do you want to reserve? Two minutes. Two minutes. I have one more issue. Okay, why don't you get to the cap one. Yeah. Do the third one now. Yeah. And the third issue is that Mr. Malgoza-Guerrero meets the criteria for deferral of removal under the Convention Against Torture. Counsel, I have a question about that. And assuming that we agree with you, that the BIA didn't really come to terms with the evidence here, both the country conditions report, the magazine articles, and the testimony that was corroborated and so forth, wouldn't we have to remand for the agency to reconsider? I mean, the way you're arguing it, it's as if we could grant that relief, but wouldn't we have to send it back? I agree. It would have to be remanded. I agree. But I believe that Mr. Malgoza-Guerrero meets that criteria for protection under CAT. Two of his employees were killed by a gang, the Knights Templar. He was later assaulted by the Mexican military. And he received death threats by cartels for not paying extortion money. So it's clear that he, it's more likely than not that he will face future persecution because of his position as a business owner. Thank you, Counsel. Thank you. May it please the court, my name is Andrew O'Malley. I represent the Attorney General of the United States. This court should deny the petition for review because the agency applied the proper standard in determining that Mr. Malgoza's illicit trafficking and prostitution constitutes a particularly serious crime, barring him from withholding of removal, and substantial evidence supports the agency's determination that he failed to demonstrate eligibility for deferral of removal under the Convention Against Torture. That's the issue I'd like to ask you about. I, the BIA's decision states there is no evidence that any public official in Mexico seeks to torture him or would consent or acquiesce in his torture. That's the end of the quote. That's not true. There is evidence in the record, not just his own testimony, but there's all kinds of documentary evidence that public officials turn a blind eye, including the mayor that supposedly, at least according to the testimony, which was not deemed incredible, that the mayor told the police to stop investigating these crimes. So I don't understand how substantial evidence supports the CAT decision. Your Honor, you're correct that there is objective evidence saying that in some localities there is corruption, there is delusion. Not just some localities. He says in this case. But not in this case, Your Honor. He says that the mayor told that the investigation of the things that had happened to him was called off by officials. That's not correct. That's not what he said. What he said was he heard rumors from others that the mayor was involved with drug cartels, so he didn't follow up with the police to find out what they were doing, simply based on these rumors and speculation by others. So we don't know if the police were investigating. They told him they were investigating. But we don't know what happened with that investigation because he didn't go to the police and ask or follow up on his request, simply because he heard rumors from others that the mayor was involved with cartels, and therefore he didn't go and ask. Well, my point is that the BIA basically didn't talk about any of this evidence, didn't discuss the documents, didn't discuss the country reports. And in a number of cases, including Madrigal and I forget the names of the other ones at the moment, we have remanded in situations almost identical to this. Yeah, the BIA's decision is pretty concise, but the immigration judge did go through this evidence. Well, it's wrong. It's not just concise. I don't see how it's wrong. He was never harmed. He was never harmed by a public official. No public official was ever instructed or was ever notified that he was in danger or that there was a threat. And no public official ever acquiesced to any torture of this individual. And there's no evidence that they would. You know, the crux of his cat claim is that he's going to be tortured by the cartels because he's a business owner. Now, the only evidence he has there And that the police won't help him because they are bought off by the cartels or in cahoots with the cartels. And there is evidence of that in the record. There is. But that general evidence, that general country conditions evidence, is not enough to show that this individual, more likely than not, will be tortured by or with the acquiescence of a public official. But the BIA never discussed that evidence. They never made the argument that you're now making. But the immigration judge But the immigration judge said there was no evidence. But the immigration judge did discuss the evidence. But that's not the decision we're looking at, is it? No, it's not. But the board affirmed that decision. And you can look at the immigration judge's decision to see what the board affirmed. And the immigration judge specifically went through his testimony, went through his claims, went through the fact that, you know, he was, two of his employees were killed in 2010 when he first went back to Mexico. But he had no idea why. Nobody threatened him on that basis. Nobody said at that time, you know, we're going to do this to you if you don't pay us our ransom or our extortion. He simply accepted somebody's statement, his neighbor's statement, that maybe they were after you. He paid Didn't he pay extortion money for a couple of years? He did. To curtail himself. And when he wanted to stop, he was told that he'd be killed? Yes. Okay. He was. He was told that he would be killed. But there's no Nobody followed up on that threat. There's no evidence that if he had gone to the police, they would not have helped him. The evidence that there are instances of corruption in Mexico do not demonstrate that more likely than not, this individual will be tortured in Mexico. In fact, the evidence shows that there is significant progress in Mexico with respect to this, this criminal organization that he's afraid of specifically, and that they have been losing control in the localities. I think the difficulty is that your explanation may be entirely reasonable that the BIA didn't say that. I think the BIA's decision is enough. When you, when you, when they say there's no evidence, I beg your pardon? When they say there's no evidence. What you're doing is discounting the evidence and explaining it away, which is, is fair. But they didn't say, they didn't adopt your explanation, and they didn't do a matter of Bourbon or affirmance adopting the IJ's reasoning. That's true, but I think when you get into the fact that it's this specific individual that would, that we're looking at whether this specific individual would be tortured in Mexico, then yes, that's true. There is no evidence that he would. There's simply nothing showing that the police would, would acquiesce in his torture, especially when you look at his specifics, the specifics of his claim. Could I ask you about the jurisdictional question? Is this the kind of jurisdictional issue that can be raised at any time, or did it have to be exhausted? You know, I'd be inclined to agree with your, with your assertion that it would be an exhaustion issue. It was a question. Well, well, your, your question before that, whether it was an exhaustion issue. I think so, especially since the individual consented to agency jurisdiction. And he received his hearing notice. He showed up for the hearing. He went through the entire process. He, he essentially consented to, to agency jurisdiction. Well, but at least in the court context, parties cannot consent to jurisdiction. For example, if a diversity case is not diverse, the parties can't just say, well, we'd really kind of like to have the district court decide it. We have the jurisdiction we have, but is the rule different for an agency where you show up for the hearing? You know, I do not, I do not know. I don't know of anything that would say that. I can certainly take a look and, and 28-J afterwards if I find anything. But I, I don't know if there is a difference, a distinction between agency jurisdiction and challenging it here in the circuit court versus having a challenge, or challenging it there at the, at the agency level. I don't think it matters. I think that the the service of the hearing notice combined with the notice to appear was sufficient to vest the immigration court with jurisdiction. Well, that's what Bermuda's said, and. It is, it's also, it goes back to this court's decision in POPA, which we included in our response to the 28-J saying that, that these documents together are sufficient under the statutory requirement to give a notice to the alien as to when he needs to show up and, and what needs to happen. I would note that Bermuda's Cota is pending before this court. I think briefing is January and February, just so that that's out there. And also, I, I believe that, that Bermuda's Cota is right, that, that immigration court jurisdiction is a regulatory creation. That the regulation specifies that jurisdiction vests when a charging document is filed. It doesn't say notice to appear. And when you get into what a notice to appear is under the regulations, it doesn't require the time and date. It's a different animal than what we're talking about statutorily. Let me ask you sort of a practical question. If we were to determine that we ought to decide the jurisdictional issue, even though it wasn't raised in the agency, should we defer our decision until the Bermuda's appeal is decided? You certainly can. I, the, the aliens, the individual's not detained. You can certainly wait for, for that determination. I'm sure there'll be more fulsome discussion of, of the issues in that decision than were raised in the 28-J letter and the response here. I don't think it's necessary. I think that, that the the Bermuda's Cota decision really is, is on point and makes good sense. And it's, it's a proper statement of the law. But yes, you, it's, you certainly can. I'd like, also like to touch on the particularly serious crime determination. There's no question here that the crime was an aggravated felony conviction. Petitioner concedes that it was as such and that it would be a particularly serious crime as a, as an aggravated felony. The real issue here is whether the board properly applied the YL factors. And it, it simply did. That's consistent with YL. It's consistent with the way that this court has approached the YL factors. In multiple decisions since then, these are all requirements. An individual failed to meet the first requirement, which is that it be a small quantity. The court has consistently held that a kilo of drugs, a kilo of opium in one case, is not a small amount. The board has held that a kilo of heroin is not a small amount. That's specifically right on point. I'd also like to touch on, it's in the briefing, it wasn't raised at argument. I'd like to touch on the void for vagueness argument that's there. I think that's foreclosed by this court's decision in Alfonso's. I don't think any- Well, the reasoning of Alfonso's certainly is not consistent with later Supreme Court decisions. Even the outcome may be, but the reasoning is severely undercut, isn't it? I don't think it's severely undercut. I think there's that statement that because there's, there are some instances where it's not vague, that that saves it. I think that's difficult now after Johnson. I don't think it's enough to invalidate the whole thing. But the concerns that were at issue in Johnson simply don't implicate the particularly serious crime statute. We're not talking about a residual clause. We're talking about the application of elements and case by case factors to a standard. We're not talking about another level of abstraction, which was the problem in Johnson, which was that idealized crime or that idealized case. That, in fact, the idea of applying to real world factors was sort of the counterpoint in Johnson and in DiMaia, and that's not what we have here. This stands in stark contrast to those two decisions, and certainly under that standard, it's not void for vagueness. If there are no more questions, I'd like to reemphasize that the substantial evidence does support the Catt determination with respect to this particular individual. There's no individualized showing that he specifically would be subject to torture. Thank you very much. I would just like to agree with the court that I think this decision should be considered in light of the review of Bermudez Coda that's presently before the court, and I also would like to say that I totally agree that the BIA decision in this case was remiss in addressing the full Catt claim, and I'd like to end there. Thank you, Your Honors. Okay, thank you for your argument. Now, the case will be submitted.
judges: Thomas, Graber, Lasnik